## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

STATE OF OKLAHOMA, ex rel., JOHN            )
DOAK, INSURANCE COMMISSIONER,               )
AS RECEIVER FOR PARK AVENUE                 )
PROPERTY & CASUALTY INSURANCE               )
COMPANY,                                    )
                                            )
AND                                         )
                                            )     Case No. 5:12-cv-00409-C
STATE OF OKLAHOMA, ex rel., JOHN            )
DOAK, INSURANCE COMMISSIONER,               )
AS RECEIVER FOR IMPERIAL                    )
CASUALTY AND INDEMNITY                      )
COMPANY,                                    )
                                            )
                         Plaintiffs,        )
                                            )
v.                                          )
                                            )
STAFFING CONCEPTS                           )
INTERNATIONAL, INC.                         )
                                            )
                         Defendant.         )

## STAFFING CONCEPTS INTERNATIONAL, INC.'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

In accordance with Federal Rules of Civil Procedure 26, 34, and 37, and Western District of Oklahoma Local Rule 37.1, Defendant, Staffing Concepts International, Inc. ("SCI") moves this Court for entry of an order compelling Plaintiff, as Receiver for Park Avenue Property & Casualty Insurance Company ("Park Avenue") and Imperial Casualty and Indemnity Company ("Imperial") (Imperial and Park Avenue collectively the "insurers"), to produce records, and states as follows:

## I.    INTRODUCTION AND FACTUAL BACKGROUND

1.     On March 4, 2013, SCI served its initial round of discovery requests, including its Request for Production of Documents, upon Park Avenue and Imperial.

2.     On April 11, 2013, Plaintiff, on behalf of Park Avenue and Imperial, responded to SCI's RFPs, agreeing to produce certain records, while raising a series of generic objections and bare assertions that the discovery requested is vague, ambiguous, overly broad, burdensome, irrelevant, or not reasonably calculated to lead to the discovery of admissible evidence.  However, as to the particular Requests identified in this Motion, Plaintiff has either failed to object or asserted objections inconsistent with the Federal Rules of Civil Procedure, and are therefore insufficient to bar production.

3.     While Plaintiff has produced responsive documents to many of SCI's Requests, as set forth more fully below, Plaintiff has steadfastly refused to produce or failed to make available responsive information as to several key areas of inquiry, such as:

a.     the actual workers compensation insurance claims files upon which Plaintiff's demands for reimbursement of deductible charges in this lawsuit are based, and records relating to administration of those claims;

b.     certain financial and accounting records of Providence Holdings, Inc., the insurers' holding company operating under the regulated Insurance Holding Company System;

c.     the records relating to the Surplus Loans made by SCI to Providence Holdings, Inc., for the benefit of the insurance company, as directed by the insurance company at the commencement of the insurance relationship, as part of the collateral obligations;

d.     the records relating to certain aspects of the Plaintiff's lawsuits against Providence Holdings, Inc., the former officers and directors of Park Avenue and Imperial, and other affiliated parties, in which Plaintiff asserts allegations and seeks remedies inconsistent with the demands made by

Plaintiff in this case (*see* SCI's Motion to Stay and Reply in support of same, Doc. No. 46, 48).

4.     The discovery requests propounded by SCI are legitimate requests to test the factual basis for Plaintiffs' allegations—many of which are expressly contradicted by the terms of the agreements they seek recovery under—and to investigate the facts supporting SCI's defenses, as well as SCI's Counterclaims.   Essentially, Plaintiff's objections seem to be based more on its disagreement with SCI's defenses, as opposed to the applicable standards of discovery under the Federal Rules of Civil Procedure.

5.     Plaintiff seeks millions of dollars in this lawsuit for payment of alleged premium and deductible charges due from SCI under high-deductible workers' compensation insurance policies.   Under these high-deductible insurance programs, SCI, as the policyholder, is responsible for the first dollar and a dollar-for-dollar reimbursement of charges incurred on the workers compensation claims filed, up to the high deductible amount established in the policies.   Thus, the insurers' duties and obligations to SCI are heightened in this arrangement, so as to avoid improperly increasing the losses and expenses, beyond those amounts provided for by law.

6.     Yet Plaintiff refuses to participate in discovery and provide SCI the underlying workers' compensation claims files, the records relating to the funds already paid by SCI to offset the amounts actually due and owing under the policies, or the records relating to the conduct of the directors of these insurers whom the Plaintiff has already sued for systematically looting the policyholders, like SCI (*see* Doc. No. 48, p. 8 and Ex. 4).   Plaintiff has reluctantly, and only the day before this filing, offered limited

access to particular claim files, while continuing to refuse unlimited access to these claim file records.[1]  Similarly, Plaintiff produced the underlying promissory note between the insurer and holding company, but has not produced the actual bank transfer and transaction records related to these funds.  This type of conduct was precisely the reason that SCI was forced to seek extension of the Court's Scheduling Order deadlines (Doc. No. 41).  Plaintiff cannot resist the extension of discovery previously requested, and then engage in stonewall tactics to avoid or delay producing relevant records in this case.[2]

7.  In essence, Plaintiff's position is that the only records relevant to a determination of the amount demanded by Plaintiff in this lawsuit is the self-serving invoices and summary reports generated by the very same insurance companies that Plaintiff has since accused of stealing from their own policyholders, like SCI.  (*see* Doc. No. 48, p. 8 and Ex. 4).  Plaintiff has refused to allow SCI to pursue its entitled discovery under the Rules, to investigate the factual basis underlying Plaintiff's multi-million dollar claims or otherwise test the reliability and trustworthiness of those summaries.  Indeed,

---

[1] Coincidentally, on the same day that Defendant's expert disclosures were due, August 15, 2013, Plaintiff finally confirmed the availability of certain workers compensation insurance claims files for inspection and copying. It remains to be seen what records will actually be made available during this inspection.

[2] Plaintiff has likewise frustrated SCI's efforts to depose key witnesses. Only 3 days prior to the long-time scheduled deposition of Mark Tharp, the principal of Tharp & Associates, hired by Plaintiff in this action as assistant receiver, Plaintiff's counsel unilaterally cancelled the deposition, refusing to produce Mr. Tharp unless the deposition was noticed as a corporate representative deposition with a list of topics. Not wishing to incur additional fees and costs to file the appropriate motion to compel Mr. Tharp's attendance, SCI re-noticed the deposition as a 30(b)(6) corporate representative for Tharp & Associates. Plaintiff's counsel has once again threatened to unilaterally cancel the deposition on the basis that Plaintiff does not approve of the manner in which the deposition was noticed. Plaintiff continues to engage in stall tactics after adamantly demanding this Court refuse an extension of the Scheduling Order in this case.

having produced the records it has offered to date, Plaintiff has already conceded over $3 million of the amounts originally demanded in its Complaint, including amounts which Plaintiff has alleged elsewhere to have been fraudulently incurred by these insurers. *See* May 1, 2013 Addendum to Report by Assistant Receiver, Mark Tharp, Plaintiffs 1909-1910, copy attached as ***Exhibit 1***; *see also* Doc. No. 46, Ex. 15. SCI fully expects that forcing Plaintiff to divulge further relevant information in this action will inevitably result in further mass concessions by Plaintiff.

8.      The law does not permit Plaintiff, on behalf of these defunct insurers, and like any other provider of professional services, to bring a collection action against a client, such as SCI, and refuse to provide the actual underlying records and information supposedly supporting the self-serving invoices. As Plaintiff asserted in this case, the invoices underlying the deductible charges, cover nearly 60,000 separate transactions (Doc. No. 43 at p. 4), yet Plaintiff pretends that those transaction can be ignored. Realistically, Plaintiff cannot even identify which transactions, and which workers compensation claims charges, are actually at issue in the amounts demanded from SCI.

12.      Neither SCI nor the fact-finder in this case is required to trust that the amounts alleged to be due were, in fact, actually and lawfully incurred and accurately reported based solely on invoices and summary reports that do not provide sufficient detail from which to assess the validity of the charges. To suggest that such invoices that were prepared by or under the supervision of individuals charged with multiple counts of fraud, negligence, self-dealing, breaches of fiduciary duties, and other violations of insurance laws, are beyond reproach is incredible.

## II.   MEMORANDUM OF LAW

The party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying and explaining how each discovery request is irrelevant, not reasonably calculated to lead to the discovery of admissible evidence, or burdensome. *Continental Illinois Nat. Bank & Trust Co. of Chicago v. Caton*, 136 F.R.D. 682, 685 (D. Kan. 1991).  It is also "well-established that discovery under the Federal Rules is limited only by relevance and burdensomeness." *Smith v. Sentinel Insurance Co., Ltd.*, Case No. 10-CV-269-GKF-PJC, 2011 WL 2883433 at * 1 (N.D. Okla. July 15, 2011).  As discussed below, Plaintiff has failed to meet its burden in showing that the requested discovery is not within the scope of allowable discovery under Rule 26, or that the requested material is overly broad, vague, or unduly burdensome.

### A.   Relevance Objections

The scope of discovery is governed by Rule 26 of the Federal Rules of Civil Procedure, which provides that parties may obtain discovery that is relevant to the claim or defense of any party.  *See Smith*, 2011 WL 2883433 at * 1.  According to the U.S. Supreme Court, "relevancy" under this Rule is to be accorded a broad and liberal treatment:

> The key phrase in this definition—'Relevant to the subject matter in the pending action'—had been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case.  Consistently with the notice pleading system established by the Rules, discovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues.  Nor is discovery limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits.

*Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (emphasis added); *see also* *Smith*, 2011 WL 2883433 at * 1 (holding that "a request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party") (internal quotations omitted). Accordingly, a discovery request should be allowed, "unless it is clear that the information sought can have no possible bearing on the claim or defense of a party." *Smith*, 2011 WL 2883433 at * 1 (internal quotations omitted). When the requested discovery appears relevant, the party opposing discovery has the burden of establishing that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1), or that it is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. *See Smith*, 2011 WL 2883433 at * 2 (citing *Gen. Elec. Cap. Corp. v. Lear Corp.*, 215 F.R.D. 637, 640 (D. Kan. 2003).

Plaintiff argues against SCI's discovery based upon Oklahoma Statute Title 36, § 1924.1(D) and (E). Such an argument fails as a discovery objection because of the aforementioned liberal interpretation of the scope of discovery as promulgated by the U.S. Supreme Court. Information relating to the mismanagement and other wrongful acts of the insurers, including self-dealing, breaches of fiduciary duties, negligence, and fraud, are directly relevant to the issues in this case. Workers' compensation insurance is a heavily regulated industry with a myriad of statutory obligations imposed upon insurers, including by way of example, those regulating the administration and handling of claims and restricting transactions susceptible to self-dealing. *See, e.g.*, Unfair Claims Settlement Practices Act, Okla. Stat. tit. 36, § 1250.1 et seq.; Unfair Practices and Frauds,

Okla. Stat. tit. 36, § 1201 *et seq.*; *see also*, Okla. Stat. tit. 36, § 1655 (providing standards for transactions with affiliate companies). Records relating to the violation of these statutory obligations are relevant to the issue of whether the demanded amounts now claimed to be owed by SCI as deductible reimbursements were, in fact, lawfully incurred. SCI has no obligation to pay for amounts unlawfully or inappropriately incurred.

Even assuming that § 1924.1(D) and (E) are applicable, which SCI disputes, the language of the statutes entitle SCI to the requested discovery. *See* Okla. Stat. tit. 36, §§ 1924.1 (D) ("but the third party is not barred by this section from seeking to establish independently as a defense that the conduct was materially and substantially related to the contractual obligation for which enforcement is sought") and (E) ("Evidence of fraud in the inducement will be admissible only if it is contained in the records of the insurer"). Plaintiff may not seek to enforce the Agreements and at the same time assert that the insurers' malfeasance under those Agreements is not relevant.   Nor can Plaintiff legitimately assert that the requested information is not related to the contractual obligations for which enforcement is sought.  On the contrary, evidence of wrongful acts by the defunct insurers is directly related to the determination of what, if any, premiums and deductibles SCI owes.

In addition to the fact that SCI has no obligation to reimburse Plaintiff for amounts not lawfully incurred, the relevancy of the requested discovery is further demonstrated by the Agreements.  The insurers expressly warranted that they conduct their business in compliance with all applicable laws and contractual obligations to third parties, and in some instances the insurers further agreed to indemnify and hold SCI harmless from any

and all damages arising from violation of their contractual or legal obligations.   The policies likewise obligated the insurers to promptly and timely pay the insurance benefits required by workers compensation laws, while investigating and defending the claims.

###   B.      Objections for Vagueness, Over Breadth and Undue Burden

Under well-settled law, a party resisting discovery bears the responsibility of establishing vagueness, over breadth, and undue burden. *See St. Paul Reinsurance Co. Ltd. v. Commercial Financial Corp.*, 198 F.R.D. 508, 511-512 (N.D. Iowa 2000).   The mere statement by a party that a request for production is overly broad, burdensome, oppressive and irrelevant is not adequate to voice a successful objection to discovery. *See St. Paul Reinsurance Co. Ltd.*, 198 F.R.D. at 511.   Rather, the party resisting discovery must show specifically how each request for production is overly broad, burdensome or oppressive. *See St. Paul Reinsurance Co. Ltd.*, 198 F.R.D. at 512 (citing *Oleson v. Kmart Corp.*, 175 F.R.D. 560, 565 (D. Kan. 1997) ("The objecting party must show specifically how each discovery request is burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden.").

As with its relevancy objections, Plaintiff wholly fails to carry its heavy burden with respect to its vagueness, over breadth, and unduly burdensome based objections. Plaintiff makes little or no effort to specify how each request is deficient and does not articulate the particular harm that would accrue if they were required to respond to the requests.   Plaintiff's objections to SCI's discovery requests are without merit. Accordingly, such objections should be overruled and Plaintiff should be compelled to produce the documents requested herein.

## III.   SCI'S SPECIFIC REQUESTS AND PLAINTIFF'S RESPONSES

**REQUEST FOR PRODUCTION NO. 2:      All documents evidencing or reflecting any contract(s) or agreement(s) between Providence and SCI.**

RESPONSE NO. 2: Objection. Providence Holdings, Inc. is not a party to this lawsuit, and the Receiver is Receiver only for Imperial and Park Avenue.

**REQUEST FOR PRODUCTION NO. 22:      All corporate records related to or setting forth the corporate structure, ownership, or control for each of Providence, including charters; bylaws; membership agreements; shareholder, partnership, LLC or similar agreements; certificates of incorporation; quarterly, annual or other periodic reports; reports and minutes of meetings of shareholders and boards of directors; corporate authorizations; inter-company agreements; employment agreements; personnel or organizational charts or directories; and all other similar documents.**

RESPONSE NO. 22: Objection. Providence Holdings, Inc. is not a party to this lawsuit, and the Receiver is Receiver only for Imperial and Park Avenue.

**REQUEST FOR PRODUCTION NO. 36: All documents evidencing, reflecting or identifying any violation of law by Providence.**

RESPONSE NO. 36: Objection. Providence Holdings, Inc. is not a party to this lawsuit, and the Receiver is Receiver only for Imperial and Park Avenue.

**REASON TO COMPEL:** Plaintiff fails to state a valid objection to producing documents responsive to SCI's Requests for Production Numbers 2, 22, and 36. Plaintiff's objections that Providence Holdings, Inc. ("PHI") is not a party to this lawsuit and that the Receiver is only the Receiver for Imperial and Park Avenue simply do not provide any valid basis for not producing responsive documents that are in their possession, custody, or control as required by Fed. R. Civ. P. 34.      However, even assuming Plaintiff's objections were really meant to be ones of relevance, such bare assertions are insufficient to bar production.

Pursuant to Fed. R. Civ. P. 26, as a named Defendant and Counterclaimant to this

action, SCI is entitled to discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party.  SCI's Requests for Production Numbers 2, 22, and 36 seek information relating to Plaintiff's former parent company, PHI, and are directly relevant to several of SCI's affirmative defenses and counterclaims.  It is undisputed that the insurers and PHI were part of the same "Insurance Holding Company System," as regulated by the Oklahoma Insurance Holding Company System Act, Okla. Stat. tit. 36 § 1651, *et seq.*, and the insurers' own financial records demonstrate that the insurers commingled finances and otherwise intertwined their business with PHI.  Indeed, the Receiver is pursuing PHI in other litigation, as part of the Receiver's duties, and on the premise that PHI was part of a holding company system.  *See e.g.,* Doc. No. 46, Ex. 15.

SCI has denied that the amounts alleged are due to Plaintiff, and has otherwise specifically asserted several affirmative defenses and counterclaims, including, without limitation, that it is entitled to a setoff for the millions of dollars of collateral that the insurer required SCI to deposit with PHI in the form of surplus loans, which were to be held for the benefit of SCI's insurance coverage with the insurer. *See, e.g.* SCI's Answer and Counterclaim, D.E. 16 at pp. 20, 25, 30.  Each of the Agreements at issue for the initial policy years specifically identify the surplus loan under the section of "Collateral," directing SCI to loan these millions of dollars to PHI, as part of the Collateral requirements in order for the insurer to issue coverage.  These Agreements further provide that the failure to deposit the surplus loan monies with PHI would result in termination of coverage. *See* 2003, 2004, and 2005 Agreements, true and correct copies of which are attached hereto as ***Composite Exhibit 2***. SCI is entitled to investigate the

facts supporting its affirmative defenses and counterclaims, including the review of the insurers' internal documents reflecting the relationship between SCI, PHI and the insurers. To that end, SCI is entitled to review and analyze the corporate records of PHI, as the insurers' parent company, that are in the possession, custody or control of Plaintiff. These records are likely to further evidence the relationship between SCI, PHI, and insurers, as well as demonstrate how SCI's monies were applied and reported.

SCI is also entitled to review and analyze documents evidencing or reflecting violations of law by PHI. Plaintiff entered into Administrative and Service Agreements with PHI, where PHI was to provide the underwriting and accounting services for the insurance businesses, in addition to other services determined by the insurers. True and correct copies of the Administrative and Service Agreements are attached hereto as *Composite Exhibit 3*. Given the intertwined relationship between PHI and Plaintiffs, along with the Receiver's claims elsewhere about the fraudulent nature of payments made to other affiliated entities under common control with PHI and the insurers (*see* Doc. No. 46, Ex. 15), the violations of law by PHI are relevant to the claims and defenses here.

**REQUEST FOR PRODUCTION NO. 44:** The Complete Workers Compensation Claims File for those Claims for which you seek reimbursement of deductibles or otherwise rely upon to support your alleged damages in this action.

RESPONSE NO. 44: All workers compensation claim files of claims closed prior to the dates the Receiver was appointed for the respective receivership estates will be made available for inspection and copying in Oklahoma City at a mutually agreeable date and time. Files for claims administered subsequent to the dates the Receiver was appointed are in the possession and control of the individual state guaranty associations administering such claims.

**REASON TO COMPEL**: While Plaintiff has purported to make the individual

workers compensation claims files available for inspection, Request 44 is included in this Motion, because Plaintiff has, in fact, refused to make claims files available, except as specifically identified by SCI. Even as to such particular claims files (as have been requested by SCI), Plaintiff has only recently offered the claims files as being available for inspection. The day before this Motion, on August 15, Plaintiff finally indicated the availability of the claims files. Because SCI has not yet had an opportunity to inspect what Plaintiff only recently offered for inspection, SCI includes this Request in its Motion. The delay of these records has likewise jeopardized the timely completion of the current discovery period, and underscores SCI's prior Motion for Extension.

**REQUEST FOR PRODUCTION NO. 97: All documents relating to any surplus loan or surplus note issued by SCI, including all drafts of each surplus note.**

RESPONSE NO. 97: Objection as ambiguous, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Any surplus loan or surplus note "issued by" SCI was not issued in favor of Park Avenue or Imperial. No surplus loan or surplus note which may have been "issued by" SCI in favor of an entity not a party to this litigation is relevant or material. Further, Judge Heaton in Pyramid Diversified Services, Inc. v. Providence Property & Casualty Insurance Company, et al. Case No. CIV-09- 0622-HE has determined the surplus notes issued by Providence Holdings, Inc. to PACA, Inc. — with either identical or substantially similar provisions as the surplus notes issued by Providence Holdings, Inc. to SCI — was and is the obligation of Providence Holdings, Inc., not Park Avenue. Judge Heaton's ruling was affirmed by the Tenth Circuit, Case No. 10-6263.

**REQUEST FOR PRODUCTION NO. 99: All communications, correspondence, notes, and meeting minutes relating to surplus loans or surplus notes issued by SCI.**

RESPONSE NO. 99: Objection as ambiguous, irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Any surplus loan or surplus note "issued by" SCI was not issued in favor of Park Avenue or Imperial. No surplus loan or surplus note which may have been "issued by" SCI in favor of an entity not a party to this litigation is relevant or material. Further, Judge Heaton in Pyramid Diversified Services, Inc. v. Providence Property & Casualty Insurance Company, et al. Case No. CIV-09- 0622-HE has determined the surplus notes issued by Providence

Holdings, Inc. to PACA, Inc. — with either identical or substantially similar provisions as the surplus notes issued by Providence Holdings, Inc. to SCI — was and is the obligation of Providence Holdings, Inc., not Park Avenue. Judge Heaton's ruling was affirmed by the Tenth Circuit, Case No. 10-6263.

**REQUEST FOR PRODUCTION NO. 104:   All bank statements reflecting surplus loan proceeds from SCI.**

RESPONSE NO. 104: Objection as irrelevant, immaterial, and not reasonably calculated to lead to the discovery of admissible evidence. Surplus loan proceeds from SCI, if any, were not proceeds received Park Avenue or Imperial. Surplus loan proceeds from SCI provided to an entity not a party to this litigation is relevant or material. Further, Judge Heaton in Pyramid Diversified Services, Inc. v. Providence Property & Casualty Insurance Company, et al. Case No. CIV-09-0622-HE has determined the surplus notes issued by Providence Holdings, Inc. to PACA, Inc. — with either identical or substantially similar provisions as the surplus notes issued by Providence Holdings, Inc. to SCI — was and is the obligation of Providence Holdings, Inc., not Park Avenue. Judge Heaton's ruling was affirmed by the Tenth Circuit, Case No. 10-6263.

**REASON TO COMPEL:**  Pursuant to Fed. R. Civ. P. 26, as a named Defendant and Counterclaimant to this action, SCI is entitled to discovery regarding any matter not privileged that is relevant to the claim or defense of any party.  SCI's Requests for Production Numbers 97, 99, and 104 seek information relating to certain surplus loans or surplus notes issued by SCI at the direction of the insurers and are directly relevant to several of SCI's affirmative defenses and counterclaims.  *See* 2003, 2004, and 2005 Agreements, Composite Exhibit 2.

Plaintiff's contention that the insurers did not receive loan proceeds from SCI is also contrary to the terms of the Surplus Loan Agreements, which provide that the proceeds were to be used to enable Providence Property & Casualty Insurance Company—which is a wholly owned subsidiary of PHI, and a part of its Insurance Holding Company System—to conduct insurance business. True and correct copies of the

Surplus Loan Agreements are attached hereto as *Exhibit 4*. The very first recital of the Surplus Loan Agreements even provides that the loan proceeds would be "repaid pursuant to the terms of this surplus note made by [Providence Property & Casualty Insurance Company] in favor of [Providence Holdings, Inc.], with the specific terms, provisions and conditions of the surplus note to be set forth below."

Moreover, Article Four of the Surplus Loan Agreements expressly and unequivocally provides that, in the event of the insurer's liquidation, the balance of the loan then due and owing would be repaid to SCI out of the assets of the insurer's estate. The receipts ledger produced by Plaintiff (Receiver 012895-012904, copy attached as *Exhibit 5*) states that PHI's ledger at the time of receivership "indicated SCI held a Surplus Note and Preferred Stock with PHI for $2,279,111.23 and $1,800,000 respectively. The Assistant Receiver's staff did not verify payments nor audit ledger activity pertaining to these holding company transactions." While the Receiver may wish to ignore SCI's credits due in this case, SCI is entitled to investigate the facts supporting its affirmative defenses and counterclaims, including the review of the internal documents in Plaintiff's possession, custody, or control, reflecting the purpose, treatment, and application of the surplus loans.

Plaintiff's reliance on the opinion rendered in *Pyramid Diversified Services, Inc. v. Providence Property & Casualty Insurance Company* is misplaced. First, it has no preclusive effect on SCI and does not serve as a basis to withhold discovery. Second, while Plaintiff is quick to summarize the opinion in a way beneficial to its position, Plaintiff neglects to address the opinion in its entirety, in which case it would become

readily apparent that the *Pyramid* holding is not as definitive as is being suggested.

More important, however, is the fact that Plaintiff may not unilaterally determine SCI's contractual rights or adjust their contractual obligations, and may not withhold documents directly relevant to an argument they put at issue. Even assuming *Pyramid* can be read as Plaintiff suggests, Plaintiff seeks to use the *Pyramid* case to refute SCI's defenses and Counterclaims, including SCI's contractual right to repayment from the receivership estate, making the requested discovery even more relevant—without it, SCI's ability to respond to Plaintiff's assertions on the impact of the *Pyramid* opinion would be significantly limited.

**REQUEST FOR PRODUCTION NO. 96:** **All documents evidencing the manner in which you invested any collateral payments from SCI.**

RESPONSE NO. 96:      Pursuant to the agreements produced in Response to Request for Production No. 1, amounts paid by Defendant over and above what was currently due for premiums and deductibles were used as operating assets for normal business operations of the insurers. Further, the Receiver is providing a dollar for dollar credit for all amounts paid by Defendant over and above what was currently due for premiums and deductibles.

**REQUEST FOR PRODUCTION NO. 98:** **All communications, correspondence, notes, and meeting minutes relating to collateral being issued by SCI.**

RESPONSE NO. 98: Documents responsive to this Request, if any, will be produced for inspection and copying at a mutually convenient date, time, and place.

**REQUEST FOR PRODUCTION NO. 101: All documents evidencing or reflecting your use or application of collateral payments made by SCI.**

RESPONSE NO. 101:      Pursuant to the agreements produced in Response to Request for Production No. 1, amounts paid by Defendant over and above what was currently due for premiums and deductibles were used as operating assets for normal business operations of the insurers. Further, the Receiver is providing a dollar for dollar credit for all amounts paid by Defendant over and above what was currently due for premiums and

deductibles.

**REASON TO COMPEL:** Plaintiff has failed to provide a response to SCI's

Request for Production Numbers 96 and 101, and has failed to produce any records in

response to Request 98, despite agreeing to do so.   Pursuant to Fed. R. Civ. P. 34,

Plaintiff was required to respond to each of these requests, stating either an objection to

the requests, including the reasons, or that the records will be produced as requested.

Plaintiff's responses to Requests 96 and 101 fail to state an objection or that responsive

records will be produced, and is therefore a failure to respond under Rule 34(a)(4).

**REQUEST FOR PRODUCTION NO. 35:    All    documents    evidencing, reflecting or identifying any violation, or alleged violation, of law by you.**

RESPONSE NO. 35:       Objection as ambiguous, irrelevant, and not reasonably calculated to lead to the discovery of admissible evidence. The Receiver is empowered by statute and the Oklahoma County District Court to collect monies and administer claims on behalf of the insolvent insurance companies for the benefit of creditors and has certainly violated no law in performance of his duties. To the extent this Request references the insolvent insurance companies, the request is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence due to OKLA. STAT. tit. 36, § 1924.1(D) and (E).

**REQUEST FOR PRODUCTION NO. 117:  All documents supporting the allegation by John Doak, Insurance Commissioner, as Receiver for Imperial, in case number CJ-2012-1768, that the named defendants in said action were negligent and/or breached their fiduciary duties, as set forth in paragraphs 14 through 38 of that certain Petition filed in the District Court of Oklahoma County, Oklahoma, dated as of March 22, 2012.**

RESPONSE NO. 117:      Objection as irrelevant, immaterial, not reasonably calculated to lead to the discovery of admissible evidence, and overly burdensome. The Request seeks information not admissible pursuant to OKLA. STAT. tit. 36, § 1924.1(D) and (E). The Receiver is vested by operation of law with the title to all of the property, contracts, and rights of action of the insolvent insurance companies, which includes the right to pursue rights of action for the wrongful acts of the officers and directors thereof. Accordingly, the laws of the State of Oklahoma regulating the liquidation of insolvent insurers provides that the Receiver's allegations and evidence of wrongful acts not related

to the contractual obligations for which enforcement is sought (i.e., what Defendant owes for premiums and deductibles) is not relevant evidence in this case.

**REQUEST FOR PRODUCTION NO. 118:** All documents supporting the allegation by John Doak, Insurance Commissioner, as Receiver for Imperial, in case number CJ-2012-1768, that Jerry Lancaster and Derek Lancaster were negligent and/or breached their fiduciary duties of care and loyalty, as set forth in paragraphs 39 through 64 of that certain Petition filed in the District Court of Oklahoma County, Oklahoma, dated as of March 22, 2012.

RESPONSE NO. 118:      See Response to Request for Production No. 117.

**REQUEST FOR PRODUCTION NO. 119:** All documents supporting the allegations by John Doak, Insurance Commissioner, as Receiver for Imperial, in case number CJ-2012-1768, that the named defendants in said action were negligent and/or breached their fiduciary duties, as set forth in paragraphs 65 through 77 of that certain Petition filed in the District Court of Oklahoma County, Oklahoma, filed on March 22, 2012.

RESPONSE NO. 119:      See Response to Request for Production No. 117.

**REQUEST FOR PRODUCTION NO. 120:** All documents supporting the allegations by the Oklahoma Insurance Commissioner, in case number CJ-2010-2340, that Imperial was systematically looted by its officers and directors, as alleged in Proposition I of State of Oklahoma, ex rel Kim Holland's Response to Imperial Casualty and Indemnity Company's Application to Dissolve, Vacate, or Modify Order, filed on March 29, 2010.

RESPONSE NO. 120:      See Response to Request for Production No. 117.

**REQUEST FOR PRODUCTION NO. 121:** All documents supporting the allegations by the Oklahoma Insurance Commissioner, in case number CJ-2010-2340, that the principals of Imperial were directly responsible for looting and the downfall of Providence Property and Casualty Insurance Company, now known as Park Avenue, and that in "one of the oldest insurance fraud schemes around, Imperial's principals facilitated a transaction where they would be paid the purchase price for Park Avenue, $37.5 million, out of Park Avenue's own money," as more particularly and fully described in Proposition II of State of Oklahoma, ex rel. Kim Holland's Response to Imperial Casualty and Indemnity Company's Application to Dissolve, Vacate, or Modify Order, filed on March 29, 2010.

RESPONSE NO. 121:      See Response to Request for Production No. 117.

**REQUEST FOR PRODUCTION NO. 122:** All documents supporting the allegations by the Oklahoma Insurance Commissioner, in case number CJ-2010-2340, that "Derek Lancaster has personally committed and conspired with other individuals to loot Imperial and to commit fraud against Imperial, the OID, and the policyholders of at least two insurance companies," as more particularly and fully described in Proposition III of State of Oklahoma, ex rel Kim Holland's Response to Imperial Casualty and Indemnity Company's Application to Dissolve, Vacate, or Modify Order, filed on March 29, 2010.

RESPONSE NO. 122:       See Response to Request for Production No. 117.

**REASON TO COMPEL:** Pursuant to Fed. R. Civ. P. 26, as a named Defendant and Counterclaimant to this action, SCI is entitled to discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party. SCI's Request for Production Numbers 35, 117, 118, 119, 120, 121, and 122 seek information relating to allegations made by the Receiver against the former owners, officers, directors, and employees of the insurers, as well as the former actuarial firm utilized by the insurers, which contradict Plaintiff's claims, and support SCI's defenses and counterclaims.

For example, as outlined in more detail in SCI's Motion for Temporary Stay, Doc. No. 46, the Receiver has alleged that the former officers and directors of the insurers failed to properly and timely seek, and thereby waived, the collection of IBNR reserves and other amounts from PEOs, like SCI. The Receiver has also alleged that the insurers' former actuarial firm failed to assess and compute the very same IBNR amounts that the Receiver now seeks from SCI. The Receiver has therefore asserted entitlement to the same monies sought from SCI against two other parties, in two separate lawsuits, improperly seeking inconsistent rulings. The documents supporting these allegations are highly relevant, as they contradict Plaintiff's claims against SCI and would demonstrate

that SCI is not liable for the amounts claimed to be due.

SCI refers to the additional legal arguments above demonstrating that the requested discovery is also relevant to determining potential indemnity obligations of Plaintiffs, and what, if any, amounts were lawfully incurred by Plaintiffs, notwithstanding Plaintiffs' reference to Okla. Stat. tit. 36, § 1924.1(D) and (E).

**REQUEST FOR PRODUCTION NO. 24: All documents relating to any sale or other transfer of ownership and/or control, including by dividend, of Imperial from January 1, 2005 to present.**

RESPONSE NO. 24:      Objection as seeking information as irrelevant, not reasonably calculated to lead to the discovery of admissible evidence. Without waiving this objection, documents responsive to this Request, if any, will be produced for inspection and copying at a mutually convenient date, time, and place.

**REASON TO COMPEL:** Plaintiff's response to SCI's Request for Production Number 24 is incomplete.  Despite SCI's request for all documents relating to any sale or other transfer of ownership and/or control of Imperial, Plaintiff produced only one record—a copy of the five-page Form D filing made with the Oklahoma Insurance Department (Receiver 18990-18994).  Plaintiff failed to produce any other documents relating to a transaction that indisputably occurred, such as correspondence, notes, meeting minutes, etc.  SCI respectfully requests that the Court order Plaintiff to produce the responsive documents or to state that no additional documents exist and describe the efforts to determine the same.

**REQUEST FOR PRODUCTION NO. 31:      All    invoices    for    services rendered by GIM on Claims covered by any of the Agreements.**

RESPONSE NO. 31: Documents responsive to this Request, if any, will be produced for inspection and copying at a mutually convenient date, time, and place.

**REQUEST FOR PRODUCTION NO. 33:   All documents reflecting or identifying payments made to GIM relating to any Claims covered by any of the Agreements**.

RESPONSE NO. 33:        See Response to Request for Production No. 6.

**REASON TO COMPEL:** Plaintiff's Response to SCI Requests 31 and 33 are incomplete, as Plaintiff has only produced summarized spreadsheet reports identifying payments made to various payees.  Plaintiff has failed to produce the actual invoices, or any other responsive document, such as correspondence, notes, meeting minutes, etc.  SCI respectfully requests that the Court order Plaintiff to produce these records.

**REQUEST FOR PRODUCTION NO. 48:     All     documents     constituting and/or reflecting the complete payment history of all Claims relating to any of the Agreements**.

RESPONSE NO. 48: See Response to Request for Production No. 6.

**REQUEST FOR PRODUCTION NO. 57: All documents reflecting any interest charges or late fees assessed by any vendor servicing claimants on Claims covered by any of the Agreements.**

RESPONSE NO. 57: Documents responsive to this request, if any, would be included in Response to Request for Production No. 6.

**REQUEST FOR PRODUCTION NO. 58: All documents reflecting any interest charges or late fees assessed by any vendor servicing claimants on Claims for which you seek reimbursement of deductibles or otherwise rely upon to support your alleged damages in this action.**

RESPONSE NO. 58:  See Response to Request for Production No. 57.

**REQUEST FOR PRODUCTION NO. 81:   All documents reflecting or identifying payments made without approval or concurrence from the insured on Claims covered by any of the Agreements.**

RESPONSE NO. 81:        Object to the form. The contract does not require the insurer to seek the approval or concurrence of the insured before making payments on claims covered by the Agreements, and the insurers' determination of the Incurred Loss

Deductible Liabilities is conclusive and binding, absent manifest error. All claims were administered and payments made pursuant to the proposals and policies. See Responses to Requests for Production Nos. 1 and 6.

**REQUEST FOR PRODUCTION NO. 82: All documents reflecting or identifying payments made without approval or concurrence from the insured on Claims for which you seek reimbursement of deductibles or otherwise rely upon to support your alleged damages in this action.**

RESPONSE NO. 82:        See Response to Request for Production No. 81.

**REASON TO COMPEL:**   Plaintiff has failed to provide a response to SCI's Request for Production Numbers 48, 57, 58, 81 and 82.  Plaintiff's reference to the documents produced in response to SCI's Request for Production Number 6 is not responsive, incomplete and evasive, and is therefore treated as a failure to respond under Rule 34(a)(4).  The records produced in response to Request Number 6 contain reports of payments made, but do not allow for evaluation of the payment itself or the underlying charge, let alone reflecting the complete payment history of the claims under SCI's insurance policies—something that would necessarily show individual charges and payments.  Access to the complete payment history of the claims, including the details of the vendor's charges, is necessary to be able to assess the propriety of the payments (e.g., whether there are duplicative payments, payments made to the wrong party, late fees, fines and penalties for failing to adjust the claims in accordance with applicable law, etc.).  SCI respectfully requests that the Court order Plaintiff to produce documents responsive to Request Number 48, 57, 58, 81 and 82.

**REQUEST FOR PRODUCTION NO. 85:   All documents reflecting or identifying non-compliance with your claim administration standards on Claims covered by any of the Agreements.**

RESPONSE NO. 85:       Objection as overly broad, vague, and unduly burdensome. Without waiving objections, the Receiver is not aware of any documents responsive to this request.

**REQUEST FOR PRODUCTION NO. 86:       All documents reflecting or identifying non-compliance with your claim administration standards on Claims for which you seek reimbursement of deductibles or otherwise rely upon to support your alleged damages in this action.**

RESPONSE NO. 86:       See Response to Request for Production No. 85.

**REASON TO COMPEL:** Plaintiff's Response to SCI's Requests 85 and 86 are evasive and incomplete. Plaintiff rests on it being unaware of responsive records, yet the balance of Plaintiff's responses to other Requests subject to this Motion to Compel reflect that Plaintiff has never attempted to engage in any evaluation of the standards of claims administration undertaken by the insurers, instead resting its demands in this case on the presumption of reliability and veracity of the charges that Plaintiff found in the insurers' invoices and summary reports. Plaintiff is "unaware" of the responses to these Requests, because Plaintiff continues to ignore the insurers' deficiencies in this case, while prosecuting the deficiencies in other litigation. Plaintiff is not entitled to conclude its discovery obligations based on its unwillingness to investigate matters that do not serve the Plaintiff's litigation goals. In light of this evasive response, SCI respectfully requests that this Court order Plaintiff to conduct a full inspection of the records it possesses or controls, in order to actually determine whether these records exist.

**REQUEST FOR PRODUCTION NO. 109: All documents reflecting or identifying submission of Claims to any reinsurer for coverage.**

RESPONSE NO. 109:       See Response to Request for Production No. 108.

**REASON TO COMPEL:**   Plaintiff has failed to provide a response to SCI's

Request for Production Number 109. Plaintiff's reference to the documents produced in response to SCI's Request for Production Number 108, which sought production of any reinsurance contracts covering the claims Plaintiff relies upon to support its alleged damages, is not responsive, and is therefore treated as a failure to respond under Rule 34(a)(4). The reinsurance policies do not in any way reflect or identify any submission of claims to any reinsurer for coverage, as requested in Request Number 109. Plaintiff has not stated any objection to this request and SCI respectfully requests that the Court order Plaintiff to produce any documents responsive to Request Number 109, or to confirm that no such documents exist and describe their efforts to determine the same.

**REQUEST FOR PRODUCTION NO. 123: Any and all documents, reports, compilations of data, exhibits, summaries, analyses, and treatises which you expect to offer into evidence or rely upon at the trial in this proceeding.**

RESPONSE NO. 123:      Objection. This request is untimely. The Receiver will comply with the Scheduling Order with respect to the production of witness and exhibit lists.

**REQUEST FOR PRODUCTION NO. 125: Any and all documents that you have provided or intend to provide to any of your expert witnesses in this proceeding for the purpose of that witness reviewing those documents or relying upon those documents in any fashion or for any purpose.**

RESPONSE NO. 125: Objection. This request is untimely. The Receiver will comply with the Scheduling Order with respect to the production of expert reports.

**REQUEST FOR PRODUCTION NO. 126: Any and all documents that you have provided or intend to provide to any of your witnesses or potential witnesses in this action.**

RESPONSE NO. 126: Objection. This request is untimely. The Receiver will comply with the Scheduling Order with respect to the production of witnesses and exhibits.

**REASON TO COMPEL:** The Scheduling Order's terms for exchange of trial

exhibits does not serve as some restriction to the production of responsive records in the course of discovery, when Plaintiff possesses the responsive information.   The Scheduling Order instead sets for the deadline disclosure of expert reports and for the final exchange of trial exhibits, among other deadlines.   There being no valid objection under the Federal Rules of Civil Procedure, Plaintiff's responses should be compelled.

## IV.   CONCLUSION

As a result of the foregoing, Defendant, Staffing Concepts International, Inc. respectfully requests the Court to enter an Order: (1) overruling Plaintiff's discovery objections as identified in this Motion; (2) compelling Plaintiff to produce all documents responsive to the above-referenced Requests for Production; (3) awarding Staffing Concepts International, Inc. its attorneys' fees and costs incurred with respect to this Motion; and (4) granting such other and further relief as the Court deems just and proper.

## V.   CERTIFICATE OF CONFERENCE

Pursuant to W.D. Okla. L.R. 37.1, the undersigned conferred in good faith with counsel for Plaintiffs, Patrick Kernan and Greg Reilly, telephonically about the matters raised in the instant Motion prior to filing.   Plaintiff continues to object to the requests identified above and refuses to produce the responsive documents or has not yet made the responsive documents available.   The distance between counsels' offices rendered a personal conference not feasible. The office for counsel for Plaintiff is located at 15 West Sixth Street, Suite 2700, Tulsa, OK 74119-5423, and the undersigned's office is located at 100 North Tampa Street, Tampa, Florida 33602, with local counsel in Oklahoma City at 100 North Broadway Avenue, Suite 3300 Oklahoma City, OK 73102.

Respectfully submitted,

/s/ Mark M. Barber
Leif E. Swedlow, Esq. (OBA # 17710)
Andrews Davis P.C.
100 North Broadway Avenue, Suite 3300
Oklahoma City, OK 73102
Telephone: (405) 272-9241
Facsimile: (405) 235-8786
E-mail: leswedlow@andrewsdavis.com


Mark M. Barber, P.A.
Admitted pro hac vice
Fla. Bar No. 0573701
BROAD AND CASSEL
100 N. Tampa Street, Suite 3500
Tampa, Florida 33602
Telephone: (813) 225-3020
Facsimile: (813) 225-3039
E-mail: mbarber@broadandcassel.com

Counsel for Staffing Concepts
International, Inc.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 16th day of _August,   2013,   I   electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the following ECF registrants:

John M. O'Connor
Keith A. Wilkes
William W. O'Connor
Jon M. Payne
Gregory P. Reilly
Patrick H. Kernan
Newton, O'Connor, Turner & Ketchum, P.C.
15 West Sixth Street, Suite 2700
Tulsa, OK 74119-5423

/s/ Mark M. Barber
Attorney