# UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| (1) STATE OF OKLAHOMA, ex rel. JOHN DOAK, INSURANCE COMMISSIONER, AS RECEIVER FOR PARK AVENUE PROPERTY & CASUALTY INSURANCE COMPANY, | ) ) ) ) ) ) ) | |
| AND | ) ) | |
| (2) STATE OF OKLAHOMA, ex rel. JOHN DOAK, INSURANCE COMMISSIONER, AS RECEIVER FOR IMPERIAL CASUALTY AND INDEMNITY COMPANY, | ) ) ) ) ) ) | Case No. 5:12-CV-00409-C |
| Plaintiffs, | ) ) | |
| vs. | ) ) | |
| (1) STAFFING CONCEPTS INTERNATIONAL, INC. | ) ) ) ) | |
| Defendant. | ) | |

**DEFENDANT STAFFING CONCEPTS INTERNATIONAL, INC.'S
SUPPLEMENT TO MOTION TO COMPEL**

Defendant, Staffing Concepts International, Inc. ("SCI"), submits the following newly obtained information to inform this Court's ruling in favor of compulsion of production of certain records of Providence Holdings, Inc. ("PHI") that are in the possession and control of the Assistant Receiver, Mark Tharp, and his counsel, and such other responsive documents as Tharp and his counsel have wrongfully withheld.

SCI's primary brief concerning why the PHI material is discoverable is included in the Motion to Compel (Doc. #50). To clarify why PHI's records relating to the SCI

"Surplus Loan" are not only discoverable, but compellingly so, SCI refers the Court to its Answer (Doc. No. 16) and its Motion for Stay (Doc. No 46).  One of the important issues in this litigation is whether SCI is entitled to a setoff of approximately $4million against Receiver's claims based upon a loan made at the insistence of Providence Property & Casualty Co. ("PPC") to PPC's parent company, PHI, at the inception of, and as a condition to, the insurance relationship.  Partial discovery that occurred prior to filing the Motion to Compel has revealed enough evidence to suggest that the money SCI loaned to PHI was in turn either loaned to PPC in the form of "Surplus Certificates" or otherwise held on account for PPC's benefit as security for potential loss reimbursement amounts.  However, actual evidence of the transfers between PHI and PPC has been withheld.  Further, contrary to the terms of the Surplus Loan Agreement, which required repayment in tandem with satisfaction of the Surplus Certificate (*see,* Doc. No. 50-4, p.2), the money borrowed from SCI was not repaid, despite PHI apparently cancelling PPC's obligation to repay PHI under the Surplus Certificates.  Documents have also been acquired showing that to perpetuate the falsehood that the Surplus Certificate debt between PPC and PHI remained outstanding,[1] interest on the Surplus Loan <u>made by SCI to PHI</u> was credited to SCI's balance <u>owed to PPC</u>, specifically to cover incurred deductible amounts.  The accounting and banking records of PHI, which will show whether such Surplus Loan interest amounts were actually paid to PPC or not, are therefore highly likely to contain admissible evidence of PPC's fraud against SCI (and probably other PEOs) and why the

---

[1] and thus fraudulently inducing SCI to continue to renew the insurance relationship

unsatisfied Surplus Loan (and PHI preferred stock into which part of the loan debt was converted) should be an offset against Receiver's claims.

### SUPPLEMENTAL FACTS:

1.     Assistant Receiver Mark Tharp was deposed in this litigation on August 22, 2013. Under oath, he denied[2] having ever had possession or control of PHI's accounting and banking records (falling within the scope of SCI's production requests or otherwise) other than temporarily possessing this information as part of his marshaling the records of the defunct insurers. Tharp testified that he immediately turned the PHI records over to PHI. Tharp made this denial despite being confronted with his own work product making explicit reference to "unverified" information gleaned from PHI's General Ledger. Exhibit 1 (Depo., pp. 212-222.); Exhibit 1a, PPC General Ledger created by Tharp with reference to PHI General Ledger on last page, footnote (a).

2.     On August 29, 2013, in reliance on Tharp's testimony that he has not had possession or control of PHI's records, a Subpoena *Duces Tecum* was issued to PHI, with corresponding Notice served on Receiver. Exhibit 2 (Notice and Subpoena D.T.)

3.     Almost immediately after service of the Subpoena directed at PHI, counsel for PHI and Jerry Lancaster provided the undersigned a copy of his recent letter to Receiver's counsel reflecting that Tharp had seized PHI's records in 2009, copied them, and refused at least through July, 2013, to permit PHI to re-acquire them. Exhibit 3 (Letter from Jones to O'Conner).

---

[2] Or, at best, misleadingly prevaricated.

4.      Additional materials provided by Mr. Jones to corroborate his letter include a document <u>created by Receiver's counsel</u> showing that some 150 boxes of comingled business records of both the insolvent insurers and PHI have been cataloged, boxed, indexed, and digitally scanned.  Exhibit 4.  In particular, but without limitation:

a.   Box A-17 (listed on page 1 of the spreadsheet) contains PHI accounting records, which should reflect the accounting treatment of SCI's Surplus Loan within the consolidated Providence enterprise;

b.   Boxes A-24 and A-28 (listed on page 4 of the spreadsheet) contain PHI's bank statements and General Ledger.  These records are expected to reveal the actual transaction details by which the money loaned to the Providence enterprise by SCI (and similarly situated PEO's) became part of PPC's assets and remained so when PPC was placed in liquidation by the Oklahoma Insurance Department ("OID");

c.   Further records listed on pages 5 include PHI consolidated financial statements, likely to shed additional light on the accounting treatment of the Surplus Notes and Surplus Certificates.

5.      Further indicating that Receiver, Tharp, and/or Receiver's counsel have been systematically withholding responsive material evidence, PHI's counsel also shared evidentiary documents obtained by him that relate to Receiver's lawsuit against Ewbank Group & IRMS, W.D. Okla. No. 5:12-CV-484-HE (one of the Related Lawsuits described in SCI's Motion for Stay, Doc. No. 46).  These documents provide examples of the insolvent insurers' decision not to compute or invoice IBNR to SCI and several other

PEOs.  Exhibit 5.  Despite being responsive to SCI's requests (e.g., Exhibit 6, Requests Nos. 4-18) and patently relevant due to Receiver's claims explicitly seeking IBNR amounts, Receiver has apparently concealed the existence of these documents and others like them, and withheld them from production, without justification or excuse.

      6.     Unbeknownst to SCI, Mr. Tharp was deposed in April, 2013, in the Receiver's lawsuit against Ewbank Group and IRMS.  In that deposition – solely on matters of document custody, control and discovery (*See*, Exhibit 7, Receiver's Motion for a Protective Order) – Tharp testified that he did, in fact, seize at least 18 boxes of PHI business and accounting records within the 188 boxes of records seized after the receivership commenced.  Exhibit 8 (Depo. of Tharp), p. 28.  Further, Tharp testified that virtually all of the seized business records (other than open workers' compensation claim files forwarded to state guaranty associations) were scanned and OCR'd to make them readily searchable by computer for purposes of identifying materials responsive to various discovery requests.  Exhibit 8, pp. 40-41.

      7.     At a prior deposition of SCI's Rule 30(b)(6) designated representative, Receiver's counsel utilized documents that were responsive to SCI discovery requests but which had not been timely produced before that deposition.  At the deposition of Jennifer Johns, an SCI witness, taken on September 10, 2013, Receivers' counsel again used numerous documents, including emails and claim administration records, that are responsive to various SCI production requests but which have not been previously produced.  The fact that undisclosed responsive documents have been used by ambush or surprise at a deposition less than a month before the current discovery cutoff date

suggests that Receivers' Counsel is continuing to withhold material evidence to SCI's prejudice without justification or excuse.

Though the disputed discovery issues in this case are exceptionally urgent (*see*, SCI's Motion to Expedite Decision on Motion to Compel, filed contemporaneously herewith), this Court should consider these newly discovered facts that SCI contends shows egregious discovery misconduct by Mr. Tharp and Receiver's counsel. SCI submits that the conduct of Receiver or its counsel, or both, has improperly suppressed and unreasonably delayed the discovery of material evidence vital to SCI's defense, without good cause or a reasonable basis for objection.

The Court should order immediate and comprehensive satisfaction of SCI's discovery requests. Given the probable volume of the wrongfully withheld production, the Court should also grant a further reasonable extension of the remaining Scheduling Order deadlines, allowing additional follow-up discovery by SCI, as additional appropriate relief pursuant to Fed R. Civ. P. 26 & 37.

Respectfully submitted,

/s/ Leif E. Swedlow
Leif E Swedlow, OBA #17710
ANDREWS DAVIS, P.C.
100 North Broadway Avenue, Suite 3300
Oklahoma City, OK 73102
Telephone: (405) 272-9241
Facsimile: (405) 235-8786
E-mail: leswedlow@andrewsdavis.com

Mark M. Barber, P.A. (FBN 0573701)
Admitted *pro hac vice*
BROAD AND CASSEL
100 North Tampa Street, Suite 3500
Tampa, FL 33602
Telephone: (813) 225-3020
Facsimile: (813) 225-3039
E-mail: mbarber@broadandcassel.com

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 17th day of September, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the Following ECF registrants:

John M. O'Connor
William W. O'Connor
Gregory P. Reilly
Patrick H. Kernan
Newton, O'Connor, Turner & Ketchum, P.C.
15 West Sixth Street, Suite 2700
Tulsa, OK 74119-5423

/s/Leif E. Swedlow

346308.1