UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) STATE OF OKLAHOMA, ex rel. JOHN DOAK, INSURANCE COMMISSIONER, AS RECEIVER FOR PARK AVENUE PROPERTY & CASUALTY INSURANCE COMPANY, <br><br> AND <br><br> (2) STATE OF OKLAHOMA, ex rel. JOHN DOAK, INSURANCE COMMISSIONER, AS RECEIVER FOR IMPERIAL CASUALTY AND INDEMNITY COMPANY, <br><br> Plaintiffs, <br><br> vs. <br><br> (1) STAFFING CONCEPTS INTERNATIONAL, INC. <br><br> Defendant. | Case No. 5:12-CV-00409-C |

**DEFENDANT STAFFING CONCEPTS INTERNATIONAL, INC.'S CERTIFICATION OF DISCOVERY PROGRESS AND REQUEST FOR EVIDENTIARY OR FURTHER DISCOVERY RULING**

As directed by the Court and pursuant to the Joint Report (Doc. No. 75) in this case, Defendant Staffing Concepts International, Inc. ("SCI"), certifies to the Court its progress on the limited workers' compensation claim files produced in this case on August 19, 2013 by Receiver, and requests an appropriate determination from this Court to either obviate the need for production of the remaining files (approximately 1745 more files) or provide for such further production and time to examine them upon the affirmative defenses raised by SCI.

1.      Plaintiff first produced the subject set of claim files on August 19, 2013, approximately five months after SCI's discovery requests first sought them, and copying at SCI's expense delayed the commencement of SCI's review by several additional weeks. However, SCI has now reviewed all of the produced claim files. The review so far has identified that the type and quality of records within the files is widely variable, but the substantial majority of them (a) contain evidence that can show that the insurers wrongfully paid amounts to others that should not have been charged to or collected from SCI, (b) that for a significant amount of allegedly paid claim amounts, Plaintiff lacks admissible evidence of the propriety of those payments, and (c) in many instances, that both of the above have occurred. Further, across all produced files:

    a.  Many of the produced files were disorganized and contain records that belong in other claim files, some of which are not claims arising under SCI's policies. Substantial time was expended organizing and reconciling records to their correct claim files.

    b.  The claim files on the whole reflect a pattern of missing documentation usually maintained by competent claims adjusters and insurers, such as medical provider invoices, copies of records of payments made, adjuster activity logs, compensation rate computations, and records of the activities of administration services for which SCI was charged. These deficiencies permeating the claim files frustrate the precise determination of amounts properly paid versus amounts that were wrongfully paid or overpaid.

2.     In 30 files that have been comprehensively audited (with similar auditing continuing in the remaining files), SCI's reviewers have examined every page of the claim file and compared their content with payment data from Receiver's "UDS" database, Receiver's "Loss Runs" allegedly extracted from such database, and applicable workers' compensation court or agency records. The result of this review has identified at least $961,036.51 in improper payments, overpayments, erroneous payments, redundant payments (of the same invoice, twice or more times), undocumented or unexplainable payments, improper pass-through charges for penalties, extra costs, attorney fee, penalties or sanctions paid and charged to SCI as a result of failures of adjusters to perform their assigned duties, and similar matters. These issues were repeatedly and consistently encountered throughout the comprehensively reviewed files. Itemization of these disputed amounts is being conveyed to Plaintiff's counsel within supplemental interrogatory answers, and the documents pertinent to these disputed amounts will become part of SCI's final exhibit list.

3.     Receiver's counsel has still not made the insurers' claims-related banking records actually available so that SCI can investigate whether the "UDS" records of payments are true and correct.[1] In several of the comprehensively audited claim files SCI has been able to determine that the total of amounts recorded as "paid" on the claim in

---

[1] Varying from the promise made in the Joint Report, Plaintiff's counsel has communicated that Receiver is compiling the relevant banking records for payments on SCI-related claims for production, rather than arranging for SCI's counsel to search the entirety of the banking records of the insurers. While this change is acceptable to SCI, Plaintiff's counsel has not provided an estimated date when such production will occur.

the UDS database does not match the total claimed to have been paid on the Receiver-prepared 12/31/12 "Loss Run" that forms the basis of Receiver's claims. The errors all appear to be to the advantage of Plaintiff. The claim files sporadically but incompletely contain copies of records concerning payments, such as wage compensation computations, invoices, checks or Electronic Funds Transfer records. Therefore, the claim files do not resolve the discrepancies between the Receiver's own Loss Run and UDS database data.

4. The workers compensation claim payments that comprise a substantial component of Plaintiff's claims against SCI in this case can be divided into four groups: (a) payments properly made according to policy terms and applicable law, (b) payments apparently made which can be shown to have been improperly charged to SCI by documentary evidence from the claim files ("disputed with documents"), (c) payments apparently made but for which documentary evidence of their propriety is missing or absent from the claim files ("disputed for lack of documents"), and (d) other payments which Receiver has stipulated should be credited in SCI's favor.

5. For payments disputed with documents or disputed for lack of documents, the determination of a precise amount in dispute for all 1852 claims would require several additional months of claim file production and auditing. The significance of the disputed amounts as indicated above justifies full production of the remaining claim files, allowing SCI reasonable time for their copying and auditing before trial.

6. However, in the alternative to complete claims file review, and in the interest of judicial economy and avoidance of needing several additional months to

prepare for trial of this matter, SCI submits that the 108-file sample that it has been permitted to review in this case, though not a statistically-based sample, will be sufficient to permit the jury to reach a reasonable estimate of the total of disputed payments and charges among the remaining 1,852 claims, if those remaining claim files were in fact produced and audited.

7.     SCI requests that the Court approve, in advance of trial, that SCI may present its reasonable estimate of improper claim payments using a reasonable formula that extrapolates SCI's assertions concerning the limited set of claim files actually produced to the remaining claim files that will not have been produced.

8.     SCI's selection of the claim files actually produced was weighted towards larger, longer lasting, and costlier claims. Therefore, SCI recognizes that simply multiplying the amounts it disputes by 1852/108 would skew the total disputed amount. A fair formula resulting in a reasonable estimate would be to multiply the disputed amounts by the ratio of the total paid amounts on all 1852 claims to the total paid amounts on the produced claim files.

Respectfully submitted,

/s/ Leif E. Swedlow
/s/ Leif E. Swedlow
Leif E Swedlow, OBA #17710
ANDREWS DAVIS, P.C.
100 North Broadway Avenue, Suite 3300
Oklahoma City, OK 73102
Telephone: (405) 272-9241
Facsimile: (405) 235-8786
E-mail: leswedlow@andrewsdavis.com

Case 5:12-cv-00409-C   Document 78   Filed 10/11/13   Page 6 of 7

Mark M. Barber, P.A. (FBN 0573701)  
Admitted pro hac vice  
BROAD AND CASSEL  
100 North Tampa Street, Suite 3500  
Tampa, FL 33602  
Telephone: (813) 225-3020  
Facsimile: (813) 225-3039  
E-mail: mbarber@broadandcassel.com  
*ATTORNEYS FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of October, 2013, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of Notice of Electronic Filing to the Following ECF registrants:

John M. O'Connor  
Gregory P. Reilly  
Patrick H. Kernan  
Newton, O'Connor, Turner & Ketchum, P.C.  
15 West Sixth Street, Suite 2700  
Tulsa, OK 74119-5423

/s/ Leif E. Swedlow

## VERIFICATION

STAFFING CONCEPTS INTERNATIONAL, INC.

By: _____
William J. Edwards, Esq.
Title: Authorized Representative

STATE OF FLORIDA            )
                            )   SS
COUNTY OF HILLSBOROUGH      )

BEFORE ME, the undersigned authority, personally appeared William J. Edwards, Esq., who is _____ ⟨personally known to me⟩ or produced _____ as identification, and who took an oath, and states that the foregoing answers to interrogatories are true and correct to the best of his knowledge.

SWORN TO AND SUBSCRIBED before me in the State and County aforesaid, this 11th day of October, 2013.

[Notary Seal: STAR KOUTROUBIS, MY COMMISSION # DD 982105, EXPIRES: December 15, 2013, Bonded Thru Budget Notary Services]

_____
NOTARY PUBLIC

Notary Name: STAR KOUTROUBIS

My Commission Number: DD 982105

My Commission Expires: December 15, 2013

349370.1

7