IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| STATE OF OKLAHOMA ex rel. JOHN DOAK, INSURANCE COMMISSIONER, AS RECEIVER FOR PARK AVENUE PROPERTY & CASUALTY INSURANCE COMPANY, <br><br> AND <br><br> STATE OF OKLAHOMA ex rel. JOHN DOAK, INSURANCE COMMISSIONER, AS RECEIVER FOR IMPERIAL CASUALTY AND INDEMNITY COMPANY, <br><br> Plaintiffs, <br><br> v. <br><br> STAFFING CONCEPTS INTERNATIONAL, INC., <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) Case No. CIV-12-409-C |

## MEMORANDUM OPINION AND ORDER

This case arises out of a dispute between Defendant Staffing Concepts International, Inc. ("SCI"), a professional employer organization, and two companies that provided SCI with high-deductible workers' compensation insurance coverage from 2003 to 2010. Those two insurance companies, Park Avenue Property and Casualty Insurance Company ("Park Avenue") and Imperial Casualty and Indemnity Company ("Imperial") (collectively the "Insurers"), are now in receivership. Plaintiff John Doak, Insurance Commissioner for the State of Oklahoma, instituted this action in his capacity as Receiver for the Insurers, alleging SCI breached its contracts with the Insurers by failing to pay all the premiums it owed and

failing to reimburse the Insurers for claims paid within SCI's deductible.[1]  SCI argues that

Receiver seeks improper relief in the form of "incurred but not reported" ("IBNR") claims,

interest, recovery for claims paid by state guaranty associations; that the Receiver improperly

denied set-off for a loan SCI made to the Insurers' holding company; and that the officers of

the Insurers fraudulently induced SCI to enter the various agreements.  The parties have now

filed cross-motions for summary judgment.

## I.  LEGAL STANDARD

Summary judgment is proper if the moving party "shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."

Fed. R. Civ. P. 56(a).  A fact is material if it affects the disposition of the substantive claim.

Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986).  The party seeking summary

judgment bears the initial burden of demonstrating the basis for its motion, and identifying

those portions of "'the pleadings, depositions, answers to interrogatories, and admissions on

file, together with the affidavits, if any,'" that demonstrate the absence of a genuine issue of

material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (citation omitted).  If the

movant satisfactorily demonstrates an absence of genuine issue of material fact with respect

to a dispositive issue for which the non-moving party will bear the burden of proof at trial,

the non-movant must then "go beyond the pleadings and by her own affidavits, or by the

_____

[1]  SCI's deductible under the insurance policies issued by the Insurers was $1,000,000 per claim, meaning the parties' agreements obligated SCI to reimburse the Insurers for the first $1,000,000 of payments made under each claim.

'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Id. at 324. A court considering a summary judgment motion must view the evidence and draw all reasonable inferences therefrom in the light most favorable to the nonmoving party. Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1225 (10th Cir. 2000).

## II. DISCUSSION

### A. Standing

After an insolvent insurer enters receivership, state guaranty associations "step into the shoes" of the insolvent insurer and administer and pay certain open workers' compensation claims "to avoid financial loss to claimants or policyholders because of the insolvency of an insurer." 36 Okla. Stat. § 2002(A). Because the Insurers in this case are in receivership, various state guaranty associations have taken over the administration of claims made under the policies the Insurers issued to SCI, including setting case reserves, making payments, and settling claims. The Receiver now seeks to recover these claim amounts paid by the state guaranty associations. SCI argues the Receiver lacks standing to seek this relief because the Receiver has not had to pay these claims out of money in the Insurers' estates, and thus the Receiver has suffered no injury.

Standing is a jurisdictional issue that may be raised at any time. United States v. Real Property known as 7501 N.W. 210th Street, Okla. City, Okla., 437 F. App'x 754, 757 (10th Cir. 2011) (citing Wilson v. Glenwood Intermountain Props., Inc., 98 F.3d 590, 592-93 (10th

Cir. 1996)).[2]  To have standing, the Receiver must have suffered an "'injury in fact,'" id. at

758, and have an "'interest that is "direct, immediate and substantial."'"  Deutsche Bank

Nat'l Trust v. Brumbaugh, 2012 OK 3, ¶ 10, 270 P.3d 151, 154 (quoting Matter of the Estate

of Doan, 1986 OK 15, ¶ 7, 727 P.2d 574, 576).  The Receiver argues that Oklahoma law

grants it "exclusive standing to bring claims against SCI."  (Pl.'s Resp. to Def.'s Mot. for

Summ. J., Dkt. No. 111 at 26 (emphasis added).)  However, the Receiver's statutory

authority only provides that the Receiver "shall be vested by operation of law with the title

to all of the property, contracts, and rights of action . . . of the insurer," not all the various

guaranty associations.  36 Okla. Stat. § 1914(B (emphasis added).  Moreover, in contrast to

the Receiver's position, Oklahoma law[3] grants the Oklahoma Property and Casualty

Insurance Guaranty Association ("OPCIGA") the authority to "retain salvage and

subrogation recoverable on covered claim obligations to the extent paid by the association,"

---

[2]  The Receiver contends that because "SCI's [standing] argument was raised for the first time in its Motion for Partial Summary Judgment (Dkt. No. 96)," "not alleged in its Answer and Counterclaim (Dkt. No. 16)" "the Court should deem this affirmative defense waived." (Pl.'s Reply to Pl.'s Mot. for Summ. J., Dkt. No. 118 at 9.) However, because standing is jurisdictional, standing cannot be waived.  See Real Property known as 7501 N.W. 210th Street, Okla. City, Okla., 437 F. App'x at 757; Deutsche Bank Nat. Trust v. Brumbaugh, 2012 OK 3, ¶ 10, 270 P.3d 151, 154 ("'Standing, as a jurisdictional question, may be correctly raised at any level of the judicial process or by the Court on its own motion.'" (internal citation omitted)).

[3]  36 Okla. Stat. § 2007(A)(3), which deems the OPCIGA to "have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent, including but not limited to the right to pursue and retain salvage and subrogation," is part of a Model Act promulgated by the National Association of Insurance Commissioners and adopted by the legislatures of most states.  (See Pl.'s Mot. for Partial Summ. J., Dkt. No. 96, Ex. 35, at 2.)

to "[s]ue or be sued," and to "[p]erform other acts as are necessary or proper to effectuate the purpose of the [Act]."  36 Okla. Stat. § 2007(A)(3), (B)(3), (9).

Because the guaranty associations may independently seek to recover deductible reimbursements from SCI, and the Receiver has not been injured with respect to the guaranty association-paid claims, the Court concludes the Receiver "lacks the requisite interest to have standing to represent the interests of the Guaranty Associations in this matter." Reliance Ins. Co. in Liquidation v. Aramark Corp., 38 A.3d 958, 966-67 (Pa. Commw. Ct. 2011). Accordingly, the Court must dismiss that portion of the Receiver's suit that seeks to recover money paid out by or owed to state guaranty associations.

B.  Breach of Contract

In all twelve of the Receiver's claims for relief, the Receiver asserts that SCI breached its annual contracts with the Insurers "by failing to pay all amounts it owes," including the full agreed-upon premium and all required deductible reimbursements.  (Dkt. No. 1, Ex. 1, ¶ 31.)  The Receiver must prove three elements to prevail on a breach of contract claim: "1) formation of a contract; 2) a breach of the contract; and 3) actual damages suffered from the breach." Coen v. SemGroup Energy Partners G.P., LLC., 2013 OK CIV APP 75, ¶ 32, 310 P.3d 657,  666 (citing Digital Design Grp., Inc. v. Info. Builders, Inc., 2001 OK 21, ¶ 33, 24 P.3d 834, 843).  The Receiver asserts summary judgment is appropriate because "[t]here is no genuine dispute as to any element of the Receiver's claim," based on the annual contracts SCI entered into from 2003-2009 "for the provision of workers' compensation insurance coverage."  (Pl.'s Mot. for Summ. J., Dkt. No. 99, at 15.)  SCI counters, contending

material fact disputes exist with respect to SCI's affirmative defenses to breach of contract and the propriety of the relief sought by the Receiver.

1.  Fraudulent Inducement

This Court has previously limited the defenses available to SCI, concluding that "[u]nder [36 Okla. Stat.] § 1924.1(E), Defendant may not use negligent or wrongful claims handling to mitigate the receiver's damages or 'otherwise,'" but may "attempt to prove fraud in the inducement" as an affirmative defense to the Receiver's breach of contract claims. (Order of Nov. 7, 2013, Dkt. No. 92, at 4.)  As evidence of fraudulent inducement, SCI relies on the conduct of the officers in common control over the Insurers and Providence Holdings, Inc. ("PHI"), the Insurers' holding company.  Specifically, SCI points to the officers' actions with respect to money SCI loaned to PHI for Providence Property & Casualty Company's ("PPC") benefit (the "Surplus Loan").  After receiving the proceeds of the Surplus Loan, PHI in turn loaned money to PPC (the "Surplus Certificates").  The Surplus Loan agreement conditioned PHI's repayment of the Surplus Loan's principle on PPC's repayment of the Surplus Certificates.  SCI contends that the officers of the Insurers and PHI canceled the Surplus Certificates, eliminating the Insurers' obligation to repay PHI, and then concealed this cancellation from SCI.  According to SCI, the deception of the officers, Insurers, and PHI is sufficient to support fraudulent inducement, precluding summary judgment on the Receiver's breach of contract claim.  The Court agrees that a genuine issue of material fact exists with respect to the Insurers' alleged fraudulent inducement.  SCI may attempt to prove at trial that the Insurers fraudulently induced SCI into entering each of the seven annual

agreements by misrepresenting the nature of the Surplus Loan during negotiations of the first contract in 2003. Alternatively, SCI may attempt to establish fraudulent inducement of at least those annual contracts entered into after the concealed cancellation of the Surplus Certificates.

2. Damages

a. Recovery of IBNR

In addition to the affirmative defense of fraudulent inducement, SCI argues that the Receiver seeks inappropriate recovery in the form of "incurred but not reported" claims and interest. IBNR claims account for claims "'that may, by virtue of historical experience, be expected to be filed, although the claimant, the nature of the claim, the responsibility for the claim and the amount of the claim are all unknown.'" In re Liquidation of Integrity Ins. Co., 935 A.2d 1184, 1190 (N.J. 2007) (citation omitted). According to the Receiver, in addition to these "pure" IBNR claims, there is also a second category of IBNR claims that accounts for claims already incurred that might subsequently exceed their case reserves due to the "upward development [in claim costs] over time" for "long-tailed" workers' compensation claims. (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 13.) The Receiver relies on an actuary to calculate an IBNR estimate for this case.

The problem with an IBNR estimate, according to SCI, is that 36 Okla. Stat. § 1929 bars payment of non-absolute claims from the assets of the Insurers' estates. SCI is correct that under Oklahoma law, "[n]o contingent claim shall share in a distribution of the assets of an insurer which has been adjudicated to be insolvent" unless that "claim becomes

absolute against the insurer on or before the last day for filing proof of claims against the assets of such insurer" or "[t]here is a surplus" in the insurer's estate. § 1929(A)(1) & (2). Because the Receiver's "'IBNR claims are actuarial estimates and are, therefore, not absolute,'" In re Liquidation of Integrity Ins. Co., 935 A.2d at 1190 (citation omitted), § 1929(A) appears to bar their payment. Neither of § 1929(A)'s exceptions apply, as the claims filing date occurred almost three years ago, on February 15, 2011, and the Receiver submits elsewhere that the Insurers are insolvent. Although the Receiver asserts "the Court should not make decisions on whether a claim is barred" or "there is or will be a surplus in one or both of the estates" (Pl.'s Resp. to Def.'s Mot. for Summ. J. at 15), the Court disagrees. It would be inequitable to permit the Receiver to sue SCI for IBNR damages when Oklahoma law prevents the Receiver from ever having to pay IBNR claims out of the Insurers' estates.

b. Interest

SCI's argument that Oklahoma law bars the Receiver from seeking interest is less persuasive. SCI primarily relies on 36 Okla. Stat. § 1925, which provides:

> The rights and liabilities of the insurer and of its creditors, policyholders, stockholders, members, subscribers, and all other persons interested in its estate shall, unless otherwise directed by the court, be fixed as of the date on which the order directing the liquidation of the insurer is filed in the office of the clerk of the court which made the order, subject to the provisions of this article with respect to the rights of claimants holding contingent claims.

According to SCI, because the Insurers did not bill SCI for late fees or interest before entering receivership, § 1925 precludes the Receiver from now seeking contractually-based

interest.  The Court disagrees.  Section 1925 protects the insurer being liquidated and that insurer's creditors, not a debtor like SCI.  See State ex rel. Crawford v. Guardian Life Ins. Co. of Am., 1997 OK 10, ¶ 6, 954 P.2d 1235, 1241 (noting "section 1925 of title 36 . . . states that the rights of the [insurer's] creditors are determined at the time the liquidation order is filed") (emphasis added); Joplin Corp. v. State ex rel. Grimes, 1977 OK 198, ¶ 13, 570 P.2d 1161, 1164 (holding a creditor was not entitled to interest on a judgment against an insurer after the liquidation order was entered because § 1925 means "the total liability of [the insurer] must be fixed at a specified date in order to achieve equitable and economical liquidation," including "[the insurer's] total liability to [the creditor] on the judgment") (emphasis added).  Nothing in § 1925 prevents the Receiver from seeking to recover contractually-permitted interest or late fees.  Accordingly, the Court must deny SCI's request for summary judgment on the issue of interest.  If the Receiver prevails on his breach of contract claims at trial and establishes that SCI has an outstanding amount due to the Insurers after crediting SCI's cash collateral and applying the balance of the Surplus Loan as set off, see infra Part IIC, the Receiver may collect interest at the contractually-authorized rates.  For unpaid and owing premium, interest will have accrued since the Receiver's demand letter dated July 29, 2010.  Interest on any unpaid and owing deductible reimbursement will have begun accruing as of the Receiver's subsequent September 27, 2010, demand letter.[4]

_____

[4] SCI also argues that even if Oklahoma law permits the Receiver to collect interest, the contracts do not provide a basis for the Receiver's requested 18% rate.  The Court agrees that if the Receiver prevails at trial on his breach of contract claims, any interest will be calculated according to the contractually-provided rates or at the statutory rate of 6% if necessary, depending on the specific provisions of each year's contract.

C.  Set-off

Finally, the parties disagree over whether the Surplus Loan SCI made to PHI entitles SCI to set-off for any premiums or deductible reimbursements it owes the Insurers.  Citing 36 Okla. Stat. § 2125(B), the Receiver moves for summary judgment, contending that Oklahoma law bars using the Surplus Loan as a set-off.  Section 2125(A) permits a domestic stock or mutual insurer to "borrow money to defray the expenses of its organization, provide it with surplus funds, or for any purpose required by its business."  The statutory provision then provides terms for approval of the loan agreement by the Commissioner and loan repayment.  Subsection B dictates that "[m]oney so borrowed, together with the interest thereon . . . shall not form a part of the insurer's legal liabilities except as to its surplus . . . or be the basis of any setoff."  However, a provision relied on by SCI in its counter-motion for summary judgment expressly protects set-off rights:  "In all cases of mutual debts or mutual credits between the insurer and another person, whether arising out of one or more contracts between the insurer and another person, . . . such credits and debts shall be offset and the balance only shall be allowed or paid," with certain exceptions not relevant to this case.  36 Okla. Stat. § 1928(A).

In this case, § 1928(A) controls the issue, meaning Oklahoma law does not prevent set-off.  First, § 1928 is found within Article 19 of the Oklahoma Insurance Code, titled "Rehabilitation and Liquidation," whereas § 2125 is located in Article 21, entitled "Domestic Stock and Mutual Insurers; Organization and Corporate Procedures."  Article 19 is more relevant to this case, as an Oklahoma state court has entered a liquidation order for the two

Insurers at issue. Moreover, when read carefully, there is no conflict between § 2125(B) and § 1928(A). Although § 2125(B) prohibits set-off between the borrowing insurer and the lender, the parties skirted § 2125(B)'s requirements by setting up the transaction using an intermediary: § 2125(B) would have been relevant for the repayment of the now-cancelled Surplus Certificates between the Insurers and PHI, but does not govern the Surplus Loan between PHI and SCI. Accordingly, in this case, rather than precluding it, Oklahoma law recognizes and protects the traditional right of set-off.

The Receiver also argues that set-off is inappropriate because PHI, to which SCI made the loan, is a distinct and separate entity from either of the Insurers and holding the Insurers liable for a loan made to PHI would constitute "reverse piercing," something not recognized by Oklahoma case law. However, this case is much simpler than the Receiver's argument suggests. Whether or not the Insurers are the alter-ego of PHI or can otherwise be held liable for that company's debts is immaterial. The contract entered into between SCI and PHI specifically provided for repayment from <u>PPC's</u> assets in the event of a liquidation of PPC. This provision, found in Article Four, clearly requires "repayment of the balance of the said borrowed funds and any accrued interest then due and owing from [PHI] shall be paid to [SCI] out of any assets remaining after the repayment of all policy obligations and all other liabilities of PPC, but before distribution of assets to shareholders." (Def.'s Mot. for Summ. J., Ex. 11 at 2.)[5] Summary judgment is therefore appropriate for SCI on the issue of set-off.

_____

[5] In a case involving a different professional employer organization, PACA/Skilstaf, Judge Heaton rejected an argument by PHI that PACA/Skilstaf's "sole remedy [for a similar surplus loan]

### III. CONCLUSION

Accordingly, the Court hereby DISMISSES for lack of standing the portion of the Receiver's suit that purports to recover money owed by Defendant SCI to any of the various state guaranty associations. The Court DENIES the Receiver's Motion for Summary Judgment (Dkt. No. 99) and GRANTS IN PART and DENIES IN PART Defendant SCI's Partial Motion for Summary Judgment (Dkt. No. 96). Therefore, the only issues for trial are the Receiver's breach of contract claims for unpaid premium and deductible reimbursements for claims already paid by the Insurers' estates – not IBNR or claims administered and paid by state guaranty associations – and SCI's affirmative defense of fraudulent inducement.

IT IS SO ORDERED this 24th day of January, 2014.

ROBIN J. CAUTHRON
United States District Judge

---

is against PPC, the entity now in state court receivership." (Pl.'s Mot. for Summ. J., Ex. 31 at 6.) Instead, Judge Heaton granted summary judgment in favor of PACA/Skilstaf and against PHI for the amount of the unpaid surplus loan. The Court does not believe its current ruling, permitting SCI to set-off the unpaid Surplus Loan against what it owes PPC, conflicts with Judge Heaton's earlier decision. Judge Heaton was correct in rejecting PHI's argument that the sole remedy a professional employer organization in the position of PACA/Skilstaf or SCI has is against PPC. Although Article Four of the Surplus Loan Agreement permits recovery against the assets of PPC in the event of PPC's liquidation, it does not preclude a more straight-forward suit against PHI. SCI may recover the Surplus Loan either from PHI or from PPC, given PPC's liquidation.